IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

MICHAEL YORK                                                                                          PLAINTIFF

V.                              NO. 4:25-CV-00054 KGB-JTK

COMMISSIONER of
SOCIAL SECURITY ADMINISTRATION                                              DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to Chief United States District Judge Kristine G. Baker. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Chief Judge Baker can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I. Introduction:**

Plaintiff, Michael York ("York"), applied for Title XVI supplemental security income on August 23, 2021, alleging a disability onset date of July 15, 2020. (Tr. at 13). The application was denied initially and upon reconsideration. *Id*. After

1

conducting a hearing, an Administrative Law Judge ("ALJ") found that York was not disabled. (Tr. at 13-28). On December 3, 2024, the Appeals Council declined to review the ALJ's decision. (Tr. at 1-6). Therefore, the ALJ's decision now stands as the final decision of the Commissioner. York has requested judicial review.

For the reasons stated below, this Court should reverse the ALJ's decision denying benefits.

## II. The Commissioner's Decision:

The ALJ found that York has not engaged in substantial gainful activity since the application date of August 23, 2021.[1] (Tr. at 16). At Step Two, the ALJ found that York has the following severe impairments: cardiac dysrhythmia; disorder of the muscle, ligament, and fascia; muscular dystrophy; mood disorder; and trauma and stress-related disorder. *Id.*

After finding that York's impairments did not meet or equal a listed impairment (Tr. at 17-19), the ALJ determined that York had the residual functional

---

[1] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

For supplemental security income claims, the relevant time-period begins the day the application was filed. (Tr. at 13-14).

capacity ("RFC") to perform work at the light exertional level, with additional restrictions: (1) can no more than frequently stoop, crouch, climb, balance, kneel and crawl; (2) can no more than frequently finger, grasp, or handle with either upper extremity; (3) cannot have concentrated or constant exposure to workplace hazards such as unprotected heights or dangerous moving machinery; (4) cannot drive a vehicle; (5) can perform simple, routine, and repetitive tasks; (6) can understand, follow, and remember job instructions; (7) can have occasional contact with supervisors, coworkers, and the public; and (8) can adapt to changes in the workplace. (Tr. at 19).

The ALJ determined that York is unable to perform past relevant work. (Tr. at 27). At Step Five, the ALJ relied upon the testimony of the Vocational Expert ("VE") to find that, based on York's age, education, work experience and RFC, jobs also existed in the national economy that he could perform, such as cleaner, assembler, and cafeteria attendant. (Tr. at 27-28). Therefore, the ALJ found that York was not disabled. *Id*.

### III. Discussion:

  A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether

it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); see also 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

    B.   York's Arguments on Appeal

York contends that the evidence supporting the ALJ's decision to deny

benefits is less than substantial. He argues that the ALJ erred in formulating the RFC by not properly characterizing York's ability to interact with others. The Court agrees.

York suffered from PTSD, bipolar disorder, anxiety, and depression. The record shows he certainly had difficulty getting along with others. (Tr. at 185-191). For instance, he said he had trouble holding a job because he does not get along with supervisors. (Tr. at 20, 42). He has gotten into physical fights with his bosses, and he had to go to jail for such an altercation. *Id*. He gets into fights with his wife, and during one, he busted out the windows in one room of their house. (Tr. at 43-44). He checked into an anger management program voluntarily, and they gave him medication for anger, but it made him feel like a zombie. (Tr. at 20, 43-44).

York was admitted for inpatient psychiatric care in September 2023. He stayed for two nights. (Tr. at 1097-1117). The hospitalization stemmed from an altercation with his wife. *Id*. York said he sometimes wished people would just kill him. *Id*. The provider noted that York was a danger to himself and others. *Id*.

York saw a therapist every few weeks. (Tr. at 22-23, 1039). He was in couples' counseling with his wife. (Tr. at 1032-1044). He seems to have experienced some improvement, but in 2023, he had the explosive anger episode with his wife. (Tr. at 1097). His psychiatrist changed his medication throughout the relevant time-

5

period, indicating that medication management was not all that effective. (Tr. at 23). York's wife told their therapist in December 2022 that she did not think he was getting better with his outbursts, and she reported that she had to remove the children from the house due to their fighting. (Tr. at 1044).

York's therapist, Bambi Parks, LCSW, submitted a letter in October 2023 describing York's symptoms and treatment. (Tr. at 1116-1117). She had seen York for over a year. Some of his symptoms were sadness, anger outbursts, mood instability, impulsivity, difficulty regulating emotions, and recurring memories of trauma. She said he had made minimal progress over the years. *Id*. She noted that he had tried to work in the past but was not able to keep a job due to interpersonal conflict. (Tr. at 1116). The ALJ did not characterize the persuasiveness of Ms. Parks' opinion because Ms. Parks did not rate functional impairments.

A consultative examiner saw York in December 2022. (Tr. at 1027-1031). He noted that York's moods were unstable. *Id*. York told the examiner that he was uncomfortable around others and remained very isolated. *Id*. He easily angered. *Id*. The examiner said that irritability could hinder socially adequate interactions. (Tr. at 1029). The ALJ found this opinion to be generally persuasive.[2] (Tr. at 25).

---

[2] On January 28, 2017, the Administration promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." See 20

The state-agency psychiatric experts reviewed the records and issued RFC opinions. In April 2022, Marilyn Jordan, Ph.D, found that, among other things, York had the capacity for work where interpersonal contact is routine but superficial, with detailed supervision required for non-routine work. (Tr. at 68). The second expert, Rachel Morrisey, Ph.D., noted York had problems with rage and violence, and she limited York to interpersonal contact that is routine but superficial. (Tr. at 80).

The ALJ found Dr. Jordan's opinion to be partially persuasive. (Tr. at 26). He found Dr. Morrisey's opinion persuasive. *Id*.

The ALJ did not explain what he meant by "generally" persuasive or

---

C.F.R. §§ 404.1520c(a)–(c), 416.920c(a)–(c) (2017). Instead, ALJs are required to analyze whether opinion evidence is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes; (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 416.920c(c). An opinion is "more persuasive if it is supported by explanation and relevant objective medical evidence, and it is consistent with other evidence in record." *Norwood v. Kijakazi*, No. 21-3560, 2022 WL 1740785, at *1 (8th Cir. May 31, 2022) (unpublished per curiam) (citing 20 C.F.R. §§ 404.1520c(c), 416.920c(c)). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Phillips v. Saul*, No 1:19-CV-00034-BD, 2020 WL 3451519, at *2 (E.D. Ark. June 24, 2020) (first citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854, 5858 (January 18, 2017); then citing Articulation Requirements for Medical Opinions and Prior Administrative Medical Findings – Claims filed on or after March 27, 2017, SSA POMS DI 24503.030).

The first two factors—supportability and consistency—are the most important, and an ALJ must explain how he evaluated those two factors. 20 C.F.R. § 416.920c(a); *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022).

"partially" persuasive. He did not elaborate on what "superficial" interactions meant.

After assessing these opinions and considering the balance of the evidence, the ALJ crafted an RFC different from the medical opinions, with respect to interpersonal interactions. The RFC states that York can have "occasional" contact with supervisors, coworkers, and the public. (Tr. at 19). This stands apart from the state-agency experts use of the word "superficial." York argues that "superficial" and "occasional" are too dissimilar to bear up under scrutiny, and that there was no discussion of why the ALJ chose to use the word occasional. "Occasional" addressed quantity of interactions, while "superficial" addressed quality.

In *Lane v. O'Malley*, No. 23-1432, 2024 WL 302395 at *1 (8th Cir. Jan. 26, 2024), the Eighth Circuit declined to "nitpick" the difference between "occasional" and "superficial" interactions, but the Court found that the record, as a whole, suggested that the claimant could perform the jobs identified. In another case from this Circuit, the ALJ declined to include verbatim both words "superficial" and "occasional," which has been used in the consulting psychologists' RFCs; the ALJ just used the word "occasional" in the RFC. *Jennifer L. v. Comm'r of the SSA*, Case No. 23-cv-1822-KMM/TNL, 2024 WL 4003021 at *10-13 (D. Minn. Aug. 30, 2024). The *Jennifer L.* Court found that the ALJ did not err. But in *Jennifer L.*, the claimant was not as compromised as York is here. One of Jennifer L.'s examiners

found that she was not significantly limited in the ability to act appropriately with the public (*Id*. at *10), and unlike York, she did not have explosive outbursts, fights with her bosses, or inpatient hospitalization. In this case, York's interpersonal difficulties are serious, if not severe. Explosive rage, physical fights, destruction of property, jail time and inpatient hospitalization; York certainly had real problems getting along with others in any socially acceptable manner.

A district case from Minnesota contained these same facts, where the ALJ did not include "superficial" interactions in his RFC although the examining psychologist did (so did two state-agency experts). *Jason L. v. O'Malley*, Case No. 23-cv-184-JWB/JFD, 2024 WL 965240 at *2-4 (D. Minn., March 6, 2024). The Court remanded the ALJ's decision to deny benefits. The *Jason L.* Court emphasized that the ALJ may have had a good reason for not using the word "superficial," but he did not explain that reasoning, which was error. An ALJ must give good explanations for his findings; otherwise, meaningful judicial review is frustrated.

The ALJ in this case did not offer any explanation for preferring the word "occasional" to "superficial," and when he evaluated Dr. Jordan and Dr. Morrisey's opinions, he did not specifically address the "superficial" limitation. We do not know if that was the portion of Dr. Jordan's opinion that he found unpersuasive, or if so, why. Likewise, the ALJ did not directly question the VE about the difference in this

9

language. Neither the ALJ or the VE provided insight into how a man with York's limitations could perform the jobs requiring social interaction. And they did not appear to comprehend that there may be a difference between "occasional" and "superficial."

This Court's ruling here is fact specific. The facts of the case show that York has serious limitations, and the ALJ failed to fully explain his RFC finding. Further inquiry was required.[3] By no means is this a finding that in all instances "occasional" and "superficial" are entirely dissimilar, or that remand is always required. In many instances, the difference is not so meaningful because the claimant has shown an ability to work with others to some degree. The *Lane* case, and following cases, still serve as a guide for why an ALJ need not incorporate every line of an experts' RFC opinion. But here, the ALJ's RFC inquiry and explanations were insufficient, because York had accentuated difficulties getting along with others, and that fact was simply not properly examined. The ALJ did not fully explain his RFC finding.

## IV.   Conclusion:

---

[3] The ALJ also could have recontacted Ms. Parks to discover her RFC opinions, because her general summary better encapsulated York's difficulties than any other opinion. The failure by an ALJ to fully develop the record can be grounds for reversal. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Nevland v. Apfel*, 204 F.3d 853, 857-8 (8th Cir. 2000).

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ did not give clear reasons for how he arrived at the RFC, which RFC may well have outstripped York's functional abilities.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further administrative review.

DATED this 17th day of July, 2025.

_____
UNITED STATES MAGISTRATE JUDGE